**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2118-22

PAUL WETTENGEL,

    Plaintiff-Appellant,

v.

ASA DESIGN BUILD, LLC,
and RIDGEDALE AVENUE
DEVELOPMENT, LLC,

    Defendants-Respondents.

_____

Argued September 24, 2024 – Decided October 17, 2024

Before Judges Smith and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-6156-19.

Francis X. Garrity argued the cause for appellant (Garrity, Graham, Murphy, Garofalo & Flinn, PC, attorneys; Francis X. Garrity, on the briefs).

Robert B. Nussbaum argued the cause for respondent ASA Design Build, LLC (Saiber LLC, attorneys; Robert B. Nussbaum, on the brief).

Gerald Kaplan argued the cause for respondent Ridgedale Avenue Development, LLC (Methfessel & Werbel, attorneys; Gerald Kaplan, on the brief).

PER CURIAM

Plaintiff Paul Wettengel appeals the denial of his motion for reconsideration of a January 6, 2023 order granting summary judgment to defendants ASA Design Build, LLC (ASA) and Ridgedale Avenue Development, LLC (Ridgedale) and dismissing plaintiff's complaint for personal injuries. After a thorough review of the record, we reverse the trial court's order denying plaintiff's motion for reconsideration, reverse the portion of the January 6 order granting summary judgment to ASA, and vacate and remand as to the summary judgment granted to Ridgedale.

I.

Since our review of the denial of plaintiff's motion for reconsideration requires us to determine whether the trial court's order granting summary judgment to both defendants was palpably incorrect, we set forth the salient facts in the record viewed in the light most favorable to plaintiff. Crisitello v. St. Theresa Sch., 255 N.J. 200, 218 (2023).

Ridgedale retained ASA as general contractor for the renovation of a house Ridgedale owns in Madison, New Jersey (Property). Section 1.9 of the

general specifications incorporated into the architectural plan (the Specifications) state the general contractor shall have control over and responsibility for all safety precautions connected with the work. At his deposition, Ridgedale representative, John Hand testified that Ridgedale expected ASA to oversee the work of all subcontractors, obtain required permits, and be present on the construction site on a regular basis to determine work was proceeding in accordance with OSHA[1] and other codes, as well as the construction plans.

Hand testified ASA had the duty to ensure safety standards were met and had the responsibility to keep the job site clear of any trash and debris. Hand testified that Ridgedale's expectation was ASA's project manager would ensure material left on the job site, stairs and adjacent grounds would be cleaned up every night to avoid safety hazards. He also testified ASA had laborers come to the job site from time to time to clean up.

Hand testified Ridgedale hired certain subcontractors with which it had a prior relationship, such as the painter and the kitchen cabinet company. Ridgedale was also responsible for hiring the snow removal contractor for the premises. Hand testified that, although ASA was the general contractor, he also

---

[1] Occupational Safety & Health Act, 29 C.F.R. § 1926 (2014).

visited the site from time to time on behalf of Ridgedale to see if the contractors were working and to ask them questions regarding the project.

Plaintiff was employed by Woodworks Flooring Company (Woodworks), a subcontractor hired to install new flooring inside the house. Woodworks was contacted by Ridgedale to meet with ASA at the job site and provide a quote for the work.

Upon arriving at the job site to begin work in December 2018, plaintiff saw the site was "sloppy" and complained to ASA, asking that the site be cleaned up. ASA gave "pushback" to the request, causing plaintiff to call Ridgedale directly about the issue. When plaintiff returned the next day, there was no debris obstructing his ability to work. ASA was present on the job site while he worked in December 2018.

Plaintiff returned to the job site to perform additional work in January and February 2019. Plaintiff asserts that when he arrived on February 19, he saw the work site was again cluttered and in disarray. Plaintiff also observed snow around the exterior of the building and went upstairs to begin working. He then decided to take garbage to the outside dumpster. The next thing plaintiff remembers is waking up "lying on top of [plywood]" in the driveway "adjacent" to the dumpster. Plaintiff tried to get up but kept slipping on the plywood.

There were no eyewitnesses to the fall.  Nor were there any safety officers on the job site at the time of the incident, no safety precautions in place to prevent injury to contractors, no safety inspections conducted prior to plaintiff's injury, and no safety background checks performed for the contractors on the job site.  ASA did not investigate the accident after it occurred.

Plaintiff could not recall walking towards the dumpster, arriving at the dumpster with the garbage, or falling, but is certain he fell "[b]ecause some time afterwards, . . . I guess I just came to."  Plaintiff remembered trying to get inside the house to a closet off the foyer he knew was dark so he could sleep.  He also remembered seeing cardboard on the ground all the way up the stairs.

When plaintiff woke up in the closet, his pants were wet from the fall because there was snow in the driveway.  He managed to make his way into his work van parked in the driveway and fell asleep again.  Plaintiff drove home after he was awakened by another contractor.

Once home, plaintiff thought he had a migraine, so he decided to go to sleep early.  His wife noticed he was bleeding from his head and took him to Morristown Medical Center where he was diagnosed with a subarachnoid hemorrhage and placed in intensive care.

5

After cognitive testing, plaintiff presented with several challenges, including impairment of: short- and long-term memory; problem solving; cognitive orientation; sequencing; reasoning; and safety awareness. Plaintiff was discharged from the hospital and went to rehabilitation. The medical record shows plaintiff did not recall falling and had no recollection of the surrounding events, including how he sustained his head laceration.

Plaintiff's expert, William Mizel, CSP, Risk Management Services, reviewed the Specifications and opined that ASA was the general contractor with general supervisory authority and safety responsibility over the entire job site. Mizel stated that neither ASA nor Ridgedale had any type of written safety manual or safety documentation to provide to subcontractors, nor did ASA establish a site-specific safety plan for the project.

After reviewing photographs plaintiff's wife took of the job site when she went there to retrieve his cell phone three or four days after his fall, Mizel concluded material located on the exterior of the job site caused slip and fall hazards both on the steps as well as near the dumpster. Mizel opined that ASA, as general contractor, did not ensure its subcontractors followed basic safety or OSHA standards and the lack of safety procedures led to plaintiff working in

6

unsafe conditions and proximately caused his injuries. Mizel did not issue an opinion as to Ridgedale's liability.

Defendants moved for summary judgment, asserting plaintiff could not prove their negligence was the proximate cause of his injury. On January 6, 2023, the trial court granted summary judgment to Ridgedale and ASA, supported by an oral statement of reasons.

The court found ASA had the duty to maintain the cleanliness and safety of the job site. The court next found Ridgedale did not owe plaintiff a duty to maintain the job site or to clear the plywood on the ground near the dumpster, since it delegated that duty to ASA.

The trial court also found plaintiff failed to meet his burden on causation, despite the fact that plaintiff was throwing debris in the dumpster when the incident occurred. The trial court determined plaintiff only presented speculation that his injuries were caused by cardboard, plywood, or snow, which would in turn lead to speculation by the jury on the issue of causation. The trial court found plaintiff's expert opinion was not probative on the question of ASA's liability because there was only speculation, not facts, for the court to rely upon. As a result, the court found plaintiff's liability theory failed on causation.

7

On reconsideration, the trial court again found plaintiff was unable to show a causal link between his injury and the condition of the job site, even assuming both defendants breached a duty of care to him. The trial court found the causation proofs fell far short of that required to prove a negligence case, stating:

> What's relevant to this motion is that we can't have juries engaging in speculation. Did he trip? Did he fall? Was it snow? Did it happen as he was coming down the steps? We know he ended up next to the dumpster.
>
> . . . .
>
> [T]he [c]ourt believes circumstantial evidence could be sufficient to submit to a jury. But we don't even have that here. We don't have that next step. Was there negligence and was it the proximate cause? . . . Just because it was negligence on the job site has nothing to do with this particular case. At least there's no evidence of that sufficient to go to a jury.

The trial court denied plaintiff's motion for reconsideration in its February 10, 2023 order. This appeal followed.

## II.

We begin by addressing defendants' procedural argument that, because plaintiff filed an amended notice of appeal only as to the February 10, 2023 order denying plaintiff's motion for reconsideration, our review is confined to

8

that order and should not substantively address the January 6 order granting summary judgment to both defendants. We are not persuaded.

Since the January 6 order was referenced in plaintiff's CIS, our review of the trial court's reconsideration order comports with prevailing decisional law. See Silviera-Francisco v. Bd. of Educ. of Elizabeth, 224 N.J. 126, 142 (2016) (deeming the order "clearly identified . . . in [a] [CIS] submitted with [a] Notice of Appeal" as properly before the court for review). We discern no prejudice to defendants since the substantive issues presented on summary judgment were identified in the CIS and briefed by all parties on appeal.

## III.

### A.

We review a trial judge's decision to grant or deny a motion for reconsideration under Rule 4:49-2 for an abuse of discretion. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). "'Reconsideration is a matter within the sound discretion of the [c]ourt, to be exercised in the interest of justice.'" Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)). Reconsideration is appropriate where "'1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either

9

did not consider, or failed to appreciate the significance of probative, competent evidence . . . .'" Ibid. (quoting D'Atria, 242 N.J. Super. at 401).

Because plaintiff argues the trial court erred in denying reconsideration where he established the summary judgment granted to both defendants was palpably incorrect, we turn to the well-known standard of review. "We review a trial court's grant of summary judgement de novo, applying the same standard as the trial court." Hyman v. Rosenbaum Yeshiva of North Jersey, 474 N.J. Super. 561, 572 (App. Div.), certif. granted, 255 N.J. 419 (2023). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). "To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)).

B.

We review plaintiff's arguments under this lens and turn to the question of whether the trial court's grant of summary judgment was palpably incorrect. See Fusco v. Bd. of Educ. of City of Newark, 349 N.J. Super. 455, 461 (App. Div. 2002).

Plaintiff contends the trial court erroneously granted summary judgment to Ridgedale, along with ASA, since they owed plaintiff a duty to ensure safe working conditions over the worksite they ensured. Similarly, ASA contends Ridgedale was a co-general contractor.

Plaintiff also asserts that granting summary judgment to both defendants was palpably incorrect because there was sufficient circumstantial evidence upon which a jury could find causation. Plaintiff's theory of the case is that either slipping or tripping on the snow-covered plywood caused his fall. He further posits that his head injury, is a fact which should be considered, along with other circumstantial evidence, by a jury in determining the cause of plaintiff's fall.

C.

"For a plaintiff to prevail on a claim of negligence, he or she must prove '(1) a duty of care; (2) a breach of that duty; (3) proximate cause; and (4) actual damages.'" Jacobs v. Jersey Cent. Power & Light Co., 452 N.J. Super. 494, 504 (App. Div. 2017) (quoting Townsend v. Pierre, 221 N.J. 36, 51 (2015)). Thus, the

11

first step in the negligence analysis is determining whether each of the defendants owed plaintiff a duty.

The parties do not dispute ASA owed a duty to plaintiff under prevailing New Jersey law. However, the trial court's determination of whether Ridgedale owed plaintiff a duty is contested. Based on our review of the record and prevailing law, we conclude the trial court failed to set forth its findings of fact and conclusions of law pursuant to Rule 1:7-4 as to its determination Ridgedale owed no duty to plaintiff.

Plaintiff cites to Slack v. Whalen, 327 N.J. Super. 186, 194 (App. Div. 2000), agreeing a property owner owes no duty—so long as it gave the general contractor exclusive control. "[O]rdinarily where a person engages a contractor, who conducts an independent business by means of his own employees, to do work not in itself a nuisance . . . he is not liable for the negligent acts of the contractor in the performance of the contract." Majestic Realty Assoc., Inc. v. Toti Contracting Co., 30 N.J. 425, 431-32 (1959); Bahrle v. Exxon Corp., 145 N.J. 144, 156 (1996).

However, under our jurisprudence, a property owner who engages a contractor may be held liable for the wrongful conduct of its independent contractors in some instances including, (1) when the principal retains control over the manner and means of doing the work the contractor provided; and (2) when the principal has

engaged an incompetent contractor. Majestic, 30 N.J. at 431; Mavrikidis v. Petullo, 153 N.J. 117, 133 (1998). A principal engaging an independent contractor may properly exercise the general control necessary to create the contractual terms and monitor compliance therewith, but this does not equate with control over the means and manner of the job performance. Muhammad v. N.J. Transit, 176 N.J. 185, 196 (2003). In other words, to impose liability on a property owner, it must be shown that the property owner exercised active participation in the manner of the work. Ibid.

We have previously recognized that "whether, in a given context, 'a duty to exercise reasonable care to avoid the risk of harm to another exists is [a question] of fairness and policy that implicates many factors.'" Funtown Pier Amusements, Inc. v. Biscayne Ice Cream, 477 N.J. Super. 499, 512 (App. Div. 2024) (citing Coleman v. Martinez, 247 N.J. 319, 337 (2021)). We first consider the foreseeability of harm to the plaintiff and then analyze whether accepted fairness and policy considerations support the imposition of a duty. Ibid. (citing Coleman, 247 N.J. at 338).

> "[T]o evaluate . . . the relevant fairness and policy considerations at issue, [the Supreme Court] has adopted a test that requires 'identifying, weighing, and balancing several factors—the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution.'" Coleman, 247 N.J. at 338 (quoting Hopkins v. Fox & Lazo Realtors, 132 N.J. 426,

13

439 (1993)).  Accordingly, "all considerations must be balanced 'in a "principled" fashion, leading to a decision that both resolves the current case and allows the public to anticipate when liability will attach to certain conduct.'" Ibid. (quoting G.A.-H v. K.G.G., 238 N.J. 401, 414 (2019)).

[Funtown, 477 N.J. Super. at 513.]

Here, while Ridgedale contractually delegated broad duties and oversight to general contractor ASA, the record shows Ridgedale took actions which a finder of fact might find are indicia of control.  Ridgedale hired certain subcontractors for specific portions of the project, including plaintiff's company, who was contacted by Ridgedale's representative to meet with ASA and quote the job.  Ridgedale's representative also visited the site from time to time to see if the contractors were present and proceeding with work, and to ask questions of those contractors.  The record also shows that, after Ridgedale received a complaint from plaintiff about job site conditions, the site safety issue was rectified.

Whether a duty exists is a question of law for the trial court to decide. Rivera v. Cherry Hill Towers, LLC, 474 N.J. Super. 234, 240 (App. Div. 2022) (citing Robinson v. Vivirito, 217 N.J. 199, 208 (2014)).  Our review of the record reveals the trial court made no findings, based on evidence in the record, to

support its determination that Ridgedale owed no duty to plaintiff. See Rule 1:7-4.

For this reason, we vacate the order granting summary judgment to Ridgedale, and remand to the trial court to determine whether Ridgedale owes plaintiff a duty of care consistent with our jurisprudence, and then make the required findings of fact and conclusions of law pursuant to Rule 1:7-4. We express no opinion as to the outcome of the court's analysis on remand.

D.

We next turn to plaintiff's argument that the trial court erred by not submitting circumstantial evidence of causation to a jury. We reverse the trial court's order granting summary judgment to ASA, finding the record presented sufficient credible evidence to create a genuine issue of material fact on the issue of causation.

"[C]ourts have defined 'proximate cause' as a 'cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred.'" Cruz-Mendez v. Isu/Ins. Servs., 156 N.J. 556, 575 (1999) (quoting Daniel v. Dep't of Transp., 239 N.J. Super. 563, 595 (App. Div. 1990)). "The burden of proof rests upon the plaintiff to prove a causal relationship by a preponderance of the evidence." Dawson v. Bunker Hill Plaza Assocs., 289 N.J. Super. 309,

322 (App. Div. 1996) (citing <u>Vuocolo v. Diamond Shamrock Chems. Co.</u>, 240 N.J. Super. 289, 293 (App. Div. 1990)). "Thus, a plaintiff must show that a defendant's conduct constituted a cause-in-fact of his injuries." <u>Ibid.</u> (citing <u>Kulas v. Pub. Serv. Elec. & Gas Co.</u>, 41 N.J. 311, 317 (1964)).

"[A]lthough plaintiffs bear the burden of proving causation, 'they are not obliged to establish it by direct, indisputable evidence.'" <u>Thorn v. Travel Care, Inc.</u>, 296 N.J. Super. 341, 347 (App. Div. 1997) (quoting <u>Kulas</u>, 41 N.J. at 319). "Plaintiff's burden of proving proximate cause can be established by circumstantial evidence." <u>Bergquist v. Penterman</u>, 46 N.J. Super. 74, 89 (App. Div. 1957).

"'Proof that will justify a reasonable probability as distinguished from mere possibility is all that the law requires.'" <u>Ocasio v. Amtrak</u>, 299 N.J. Super. 139, 153 (App. Div. 1997) (quoting <u>Mazzietelle v. Belleville Nutley Buick Co.</u>, 46 N.J. Super. 410, 417 (App. Div. 1957)). "The matter may rest upon legitimate inference, so long as the proof will justify a reasonable and logical inference as distinguished from mere speculation." <u>Beyer v. White</u>, 22 N.J. Super. 137, 144 (App. Div. 1952). Once a prima facie showing is established, "[p]roximate cause is a factual issue, to be resolved by the jury after appropriate instruction by the trial court." <u>Scafidi v. Seiler</u>, 119 N.J. 93, 101 (1990).

16

Though plaintiff admits "he could not identify what caused him to fall," plaintiff contends he presented sufficient evidence from which a jury could reasonably find causation. Plaintiff argues the only obstruction he encountered was "plywood on the ground" in front of the dumpster, shown in the photographs of the site taken by plaintiff's wife a few days after the fall. Plaintiff further argues the plywood was slippery because it was covered in snow as evidenced by the fact that his pants were wet when he woke up. Plaintiff posits a jury should have been permitted to draw inferences from the evidence to "logically conclude that [plaintiff] slipped on the plywood as he was discarding debris in the dumpster."

While ASA argues plaintiff's evidence and expert testimony did not provide the degree of certainty needed to ascribe fault to defendants, that is not the standard, at this stage of the proceedings. Plaintiff must show an inference of probability that could lead a jury to find defendants caused plaintiff's injury. See Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016).

We conclude plaintiff presented sufficient circumstantial evidence from which a jury could determine ASA did not properly maintain the job site and ASA's failure caused his injury. Resolution of this jury question does not

17

involve speculation, but rather, a determination as to whether the circumstantial evidence presented establishes negligence by a preponderance of the evidence.

Bergquist, 46 N.J. Super. at 77, and Ocasio, 299 N.J. Super. at 143, both cited by plaintiff, support our conclusion. In both cases we found sufficient circumstantial evidence to present a jury question on causation. We reject defendants' attempt to distinguish Bergquist and Ocasio based on the lack of eyewitnesses to plaintiff's fall and plaintiff's inability here to remember the exact circumstances of his fall due to his head injury. Precluding plaintiff from presenting circumstantial evidence of causation in this case would be contrary to the principles of fairness underpinning our justice system and prejudicial to a plaintiff who, the record shows, has sustained a serious head injury while working alone.

It follows that we reverse the trial court's order of summary judgment granted to ASA. Should the trial court find Ridgedale owed plaintiff a duty on remand, our conclusions on the causation issue shall equally apply to Ridgedale.

The February 10, 2023 order is reversed. The January 6, 2023 order is reversed in part and vacated and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2118-22